

9

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DI~

UNITED STATES OF AMERICA,

v.

NORIO TERANISHI AND
HISASHI NAKANISHI

Defendants.
_____/

Case:2:15-cr-20306
Judge: Friedman, Bernard A.
MJ: Whalen, R. Steven
Filed: 05-21-2015 At 10:25 AM
INDI USA v TERANISHI, ET AL (dat)

Violation:   15 U.S.C. § 1
(Conspiracy to Restrain Trade)

## INDICTMENT

THE GRAND JURY CHARGES:

### The Defendants and Co-conspirators

1. The following individuals are hereby indicted and made defendants on the charge stated below in this Indictment (collectively "the Defendants"):

    (a) NORIO TERANISHI; and

    (b) HISASHI NAKANISHI

2. NGK Spark Plug Co., Ltd. ("NGK Spark Plug") is a corporation organized and existing under the laws of Japan, with its principal place of business in Nagoya, Japan.

3. NGK Spark Plug is engaged in the business of manufacturing and selling spark plugs, standard oxygen sensors, and air fuel ratio sensors (collectively "Automotive Parts") to DaimlerChrysler AG, Ford Motor Company, Fuji Heavy Industries ("Subaru"), Honda Motor Company, Ltd., General Motors Company, Nissan Motor Co., Ltd., Toyota Motor Corporation, and certain of their U.S. subsidiaries (collectively "Automobile Manufacturers") in the United States and elsewhere, for installation in vehicles manufactured and sold in the United States and elsewhere.

4. During the period covered by this Indictment, TERANISHI was employed by NGK Spark Plug. At least as early at 2000 until 2006, TERANISHI was employed in the Tokyo Sales Office rising to the rank of General Manager. In 2006, TERANISHI was promoted to the General Manager of OEM Sales and Marketing. In 2007, TERANISHI was promoted to Deputy General Manager of Sales. From July 2009 until July 2010, TERANISHI served in the Administrative Department of NGK Spark Plug's Tokyo Branch office. From July 2010 until at least July 2011, TERANISHI served as the Deputy General Manager of Sales and later as the General Manager of Sales. During that time, he also became the Vice-Head of the entire Automotive Component Group.

5. During the period covered by this Indictment, NAKANISHI was employed by NGK Spark Plug or one of its subsidiaries. Beginning in 2000 until 2002, NAKANISHI worked in NGK Spark Plug Europe. From 2002 until 2006, NAKANISHI served as Assistant General Manager in OEM Sales and Marketing. From 2006 until approximately March 2011, NAKANISHI worked at NGK Spark Plug Europe, rising to the rank of Managing Director of NGK Spark Plug Europe. In approximately March 2011, NAKANISHI returned to the OEM Sales and Marketing department.

6. Various corporations and individuals, not made defendants in this Indictment, participated as co-conspirators in the offense charged in this Indictment and performed acts and made statements in furtherance of it.

7. Whenever in this Indictment reference is made to any act, deed, or transaction of any corporation, the allegation means that the corporation engaged in the act, deed, or transaction by or through its officers, directors, employees, agents, or other representatives while they were actively engaged in the management, direction, control, or transaction of its business or affairs.

## Background of the Offense

8. During the period covered by this Indictment, the Defendants and other co-conspirators at NGK Spark Plug and certain other automotive parts suppliers sold Automotive Parts to Automobile Manufacturers for installation in vehicles manufactured and sold in the United States and elsewhere.

9. NGK Spark Plug manufactured Automotive Parts subject to this conspiracy in the United States and elsewhere. NGK Spark Plug and certain other automotive parts suppliers supplied Automotive Parts: (a) in the United States and elsewhere for installation in vehicles manufactured and sold in the United States; (b) in Japan and elsewhere for import into the United States and installation in vehicles manufactured and sold in the United States; and (c) in Japan and elsewhere for installation in vehicles manufactured in Japan and elsewhere for import into and sale in the United States.

10. A spark plug is an engine component used to deliver high electric voltage from the ignition system to the combustion chamber of an internal combustion engine. It ignites the compressed fuel/air mixture with an electric spark while containing combustion pressure within the engine. Spark plugs have a basic manufacturing design composed primarily of a shell, an insulator, a center electrode and an external (ground) electrode. Improvement of the ignitability or part longevity may be achieved by using an iridium or platinum alloy for the center electrode and a platinum alloy for the ground electrode resulting in platinum or iridium-platinum spark plugs.

11. Oxygen sensors are located before and after the catalytic converter in the exhaust system to measure the amount of oxygen in the exhaust. An oxygen sensor provides an input to the engine management computer or "engine control unit," which adjusts the ratio of air/fuel

3

injected into the engine to compensate for excess air or excess fuel. Standard oxygen sensors are "switching" sensors which essentially detect two states: rich or lean. The standard oxygen sensor element is a ceramic thimble plated inside and out with electrodes. These electrodes measure the difference in oxygen between the exhaust gas and the external air and then generate an output voltage depending on the difference between the two measured values.

12. Air fuel ratio sensors are "wideband" oxygen sensors located before the catalytic converter. An air fuel ratio sensor is paired with a special interface circuit so it can produce an electric current corresponding to the actual proportion of exhaust gas oxygen concentration enabling more precise control of the air/fuel ratio injected into the engine. This "wideband" sensor incorporates an electrochemical gas pump. An electronic circuit containing a feedback loop controls the gas pump current so that the pump current directly indicates the oxygen content of the exhaust gas.

13. When purchasing Automotive Parts, Automobile Manufacturers typically issue Requests for Quotation ("RFQs") to automotive parts suppliers. These RFQs may be issued on a model-by-model basis for model-specific parts or for a specific engine to be incorporated into multiple models. Manufacturers of Automotive Parts submit quotations, or bids, to Automobile Manufacturers in response to RFQs. Typically, the bidding process for a particular model or a particular engine begins approximately three years prior to the start of production. Automobile Manufacturers procure parts for U.S.-manufactured vehicles in the United States and elsewhere.

**Conspiracy to Restrain Trade**

14. Beginning at least as early as January 2000, and continuing until on or about July 2011, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan and elsewhere, NGK Spark Plug and other co-conspirators entered into and engaged in a combination

4

and conspiracy to suppress and eliminate competition in the automotive parts industry by agreeing to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of, Automotive Parts sold to Automobile Manufacturers in the United States and elsewhere. Defendants TERANISHI and NAKANISHI participated in this conspiracy from at least as early as 2000, and continuing until on or about July 2011. The combination and conspiracy engaged in by the Defendants and other co-conspirators was an unreasonable restraint of interstate and foreign trade and commerce in violation of the Sherman Antitrust Act, 15 U.S.C. § 1. This combination and conspiracy involved interstate trade and commerce and import trade and commerce.

15. The charged combination and conspiracy consisted of a continuing agreement, understanding, and concert of action among the Defendants and other co-conspirators, the substantial terms of which were to allocate the supply of, rig bids for, and fix, stabilize, and maintain the prices of, Automotive Parts sold to Automobile Manufacturers in the United States and elsewhere.

**Manner and Means of the Conspiracy**

16. For purposes of forming and carrying out the charged combination and conspiracy, the Defendants and other co-conspirators did those things that they combined and conspired to do, including, among other things:

    a. participating in, and directing, authorizing, or consenting to the participation of subordinate employees in, meetings, conversations, and communications in Germany and Japan to discuss the bids and price quotations to be submitted to Automobile Manufacturers in the United States and elsewhere;

    b.    agreeing, and directing, authorizing, or consenting to subordinate employees agreeing, during those meetings, conversations, and communications, on bids and price quotations to be submitted to Automobile Manufacturers in the United States and elsewhere;

    c.    agreeing, and directing, authorizing, or consenting to subordinate employees agreeing, during those meetings, conversations, and communications, to allocate the supply of Automotive Parts sold to Automobile Manufacturers in the United States and elsewhere;

    d.    approving collusive and noncompetitive prices agreed upon by subordinates during those meetings, conversations, and communications in Japan and Germany;

    e.    submitting bids, price quotations, and price adjustments to Automobile Manufacturers in the United States and elsewhere in accordance with the agreements reached;

    f.    selling Automotive Parts to Automobile Manufacturers in the United States and elsewhere at collusive and noncompetitive prices;

    g.    accepting payment for Automotive Parts sold to Automobile Manufacturers in the United States and elsewhere at collusive and noncompetitive prices; and

    h.    engaging in meetings, conversations, and communications in Japan and Germany for the purpose of monitoring and enforcing adherence to the agreed-upon bid-rigging and price-fixing scheme.

## Trade and Commerce

17. During the period covered by this Indictment, the Defendants and other co-conspirators sold substantial quantities of Automotive Parts to Automotive Manufacturers in the United States and elsewhere. Automotive Parts were manufactured in the United States and shipped within the United States from other states, and manufactured outside the United States and shipped to the United States, all in a continuous and uninterrupted flow of interstate and import trade and commerce. In addition, substantial quantities of equipment and supplies necessary to the production and distribution of Automotive Parts by NGK Spark Plug, and its co-conspirators, as well as payments for Automotive Parts sold by NGK Spark Plug, and its co-conspirators, traveled in interstate and import trade and commerce. The business activities of the Defendants and other co-conspirators in connection with the production and sale of Automotive Parts that were the subject of the charged conspiracy were within the flow of, and substantially affected, interstate and import trade and commerce.

## Jurisdiction and Venue

18. The combination and conspiracy charged in this Indictment was carried out, at least in part, in the Eastern District of Michigan and continued within the five years preceding the filing of this Indictment.

ALL IN VIOLATION OF TITLE 15, UNITED STATES CODE, SECTION 1.

A TRUE BILL.

s/Grand Jury Foreperson          Dated: May 21, 2015
Grand Jury Foreperson

s/Brent C. Snyder
Brent C. Snyder
Deputy Assistant Attorney General
Antitrust Division
United States Department of Justice

s/Lisa M. Phelan
Lisa M. Phelan
Chief, Washington Criminal I Section
Antitrust Division
United States Department of Justice

s/Marvin N. Price
Marvin N. Price, Jr.
Director of Criminal Enforcement
Antitrust Division
United States Department of Justice

s/Diana Kane
Diana Kane
Eric M. Meiring
Lauren Elfner
Washington Criminal I Section
Antitrust Division
United States Department of Justice
450 5th St. NW, Suite 11300
Washington, DC 20530
(202) 598-2426
Diana.Kane2@usdoj.gov

| United States District Court<br>Eastern District of Michigan | **Criminal Case Cov** | Case: 2:15-cr-20306<br>Judge: Friedman, Bernard A.<br>MJ: Whalen, R. Steven<br>Filed: 05-21-2015 At 10:25 AM<br>INDI USA v TERANISHI, ET AL (dat) |
|---|---|---|

**NOTE:** It is the responsibility of the Trial Attorney signing this form to complete it accurately in all respects.

## Reassignment/Recusal Information
This matter was opened in the USAO prior to August 15, 2008   [ ]

| **Companion Case Information** | **Companion Case Number:** 12-20063, 14-20494 |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | **Judge Assigned:** George Carem Steeh |
| ☒ Yes    ☐ No | **AUSA's Initials:** |

**Case Title:** USA v. NORIO TERANISHI AND HISASHI NAKANISHI

**County where offense occurred:** Wayne County and elsewhere

**Check One:**   ☒ Felony    ☐ Misdemeanor    ☐ Petty

✓ Indictment/____Information --- **no** prior complaint.
____Indictment/____Information --- based upon prior complaint [Case number:            ]
____Indictment/____Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*

## Superseding Case Information

**Superseding to Case No:** _____    **Judge:** _____

____ Original case was terminated; no additional charges or defendants.
____ Corrects errors; no additional charges or defendants.
____ Involves, for plea purposes, different charges or adds counts.
____ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Trial Attorney is the attorney of record for the above captioned case.**

May 21, 2015
Date

DIANA KANE
Trial Attorney
U.S. Dept. of Justice, Antitrust Division
National Criminal Enforcement Section
450 5th St., N.W., Suite 11300
Washington, DC 20530
Phone: (202) 307-6694
Fax: (202) 514-6525
E-Mail address: diana.kane2@usdoj.gov

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.    (5/20/13)